UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In Re: | ) |
| | ) |
| KEVIN MICHAEL LEWIS, | ) Case No. 08-48744-705 |
| | ) Judge Kathy A. Surratt-States |
| | ) Chapter 7 |
| Debtor. | ) |
| | ) |
| MOORE AUTOMOTIVE GROUP, INC., | ) **Adversary No. 08-4223-659** |
| | ) |
| | ) |
| Plaintiff, | ) **PUBLISHED** |
| | ) |
| -v- | ) |
| | ) |
| KEVIN MICHAEL LEWIS, | ) |
| | ) |
| | ) |
| Defendant. | ) |

## O R D E R

The matter before the Court is Debtor Kevin Lewis' Motion for Summary Judgment, Memorandum in Support of His Motion for Summary Judgment, Statement of Uncontroverted Facts in Support of Motion, Plaintiff Moore Automotive Group, Inc.'s Response to Defendant Kevin Lewis' Statement of Uncontroverted Facts in Support of His Motion for Summary Judgment and Plaintiff Moore Automotive Group's Memorandum in Opposition to Defendant Kevin Lewis' Motion for Summary Judgment. Upon consideration of the arguments presented, the Court hereby denies Debtor's Motion for Summary Judgment.

Plaintiff Moore Automotive Group, Inc. (hereinafter "Moore"), the former employer of Julie Lewis (hereinafter "Mrs. Lewis"), wife of Debtor Kevin M. Lewis (hereinafter "Debtor"), has filed a complaint seeking a determination that the debt owed for funds which were embezzled from Moore by Mrs. Lewis should be deemed nondischargeable as to both Mrs. Lewis and Debtor jointly on a theory of civil conspiracy. This Court previously determined that there were genuine issues of material fact as to whether Debtor conspired with Mrs. Lewis in her commission of criminal acts

against Moore. For more details, see this Court's Findings of Fact and Conclusions of Law and Order entered separately on January 22, 2010.

On or about December 28, 2005, Moore submitted a claim to its insurer, National Casualty Company (hereinafter "National"), alleging a loss of $1,825,680.00 based on the criminal acts committed against Moore by Mrs. Lewis. Moore entered into a release entitled "General Release" with National on March 6, 2006 (hereinafter "National Release"). Pursuant to the National Release, Moore was paid $270,000.00 in accordance with the terms of the insurance policies held by Moore; the first policy included coverage of up to $250,000.00 for any loss sustained as a result of certain acts, including employee dishonesty. The second insurance policy provided additional coverage in the amount of $20,000.00 for employee dishonesty. Paragraph 8(f) of the National Release states the following:

> The Insured agrees that the amount of $270,000.00 constitutes the sole payment in full and final satisfaction of the matters described in the Claim Form and any misappropriation, known or unknown, by Julie D. Lewis at any time. The Insured hereby waived and relinquishes all rights to bring any claim and/or lawsuit against the Company in the future for loss or other damage arising from or related to the matters described in the Claim Form and the Company's obligation under Policy No. 1 and/or Policy No. 2.

National Release, p. 3, ¶ 8(f).

On August 29, 2006, Moore entered into a "Mediated Settlement Agreement and Mutual Release" (hereinafter "Mediated Settlement & Release") with Larson, Allen, Weishair & Co., LLP (hereinafter "LarsonAllen"). LarsonAllen provided accounting services to Moore during Mrs. Lewis' employment. Pursuant to the Mediated Settlement & Release, Moore received $1,500,000.00 in settlement of Moore's claims against LarsonAllen. The relevant portions of the Mediated Settlement & Release are as follows:

> 2. For and in consideration of the agreements herein contained, Ronald Moore, RWM Enterprises, Inc., and Moore Automotive Group, Inc., for themselves, their shareholders, directors, officers, employees, related and affiliated parties (including but no limited to

-2-

> RWM Properties II, LLC) do hereby remise, release and forever discharge LarsonAllen, its past and present partners, directors, officers, employees and agents (collectively the "LarsonAllen Released Parites [sic]"), of and from any and all claims and demands, causes of action, debts, sums of money, accounts, suits, claims, demands and damages whatsoever, known and unknown, incurred or to be incurred, whether in law or at equity, in contract, tort, or otherwise, including but not limited to those based upon any audit, accounting, and tax services or other professional services of any kind, type or nature ever commenced, undertaken, performed, or completed, in whole or in part, at any time through the time of payment by LarsonAllen to Moore Automotive of the sums in paragraph 1 of this Agreement, for them or any of them by any of the LarsonAllen Released Parties.
> ...
>
> 5. Ronald Moore, RWM Enterprises, and Moore Automotive Group, Inc. reserve all claims against their fidelity insurer and against any tortfeasors other than any of the LarsonAllen Released Parties, with the understanding that any subrogation claim of said fidelity insurer or any other party is extinguished by this release and that Larson Allen shall not receive any of the proceeds of such claims.
>
> 6. It is expressly agreed and understood by the parties hereto that the above-recited consideration is accepted by the parties in full accord, satisfaction, compromise and settlement of all disputed claims, and that the entering into of this Settlement Agreement does not constitute an admission of fault, misconduct, negligence, liability or wrongdoing of any kind, by any Party, including the LarsonAllen Released Parties and the Moore Automotive Released Parties, but is instead made solely for the purpose of amicably terminating all disputes between them, in order to save the time, trouble and expense of complex and sharply contested litigation, for all concerned.

Mediated Settlement & Release, pp. 1-3, ¶¶ 2, 5-6.

Debtor argues that the above portions of the National Release and the Mediated Settlement & Release both constitute a general release under which Moore has disposed of the entire subject matter related to Mrs. Lewis' criminal acts, to the inclusion of any claim Moore may assert against Debtor. Therefore, Debtor argues that summary judgment is appropriate. Moore admits that it has entered into the National Release and the Mediated Settlement & Release, however, Moore disputes that such agreements are dispositive of the matter at hand. Rather, Moore argues that

-3-

the National Release was only dispositive of any claims that Moore may assert against National in connection with Mrs. Lewis' criminal acts, and the Mediated Settlement & Release is dispositive of any claims that Moore may assert against LarsonAllen in connection with Mrs. Lewis' criminal acts.

Debtor cites two principle cases in support of his position: *Goldring v. Franklin Equity Leasing, Co.,* 195 S.W.3d 453 (Mo. App. 2006) and *Slankard v. Thomas,* 912 S.W.2d 619 (Mo. App. 1995). In *Goldring*, Employer and Employee entered into a contract whereby Employer paid Employee's life insurance premiums in exchange for the right, upon Employee's death or maturity of the insurance policy, to collect the amount that Employer paid in premiums to the insurer. Years later, Employee was terminated, and Employer and Employee entered into a "Private and Confidential Separation Agreement and General Release" (hereinafter "Agreement") in which Employee released Employer from any obligation to provide employment benefits and Employer released Employee from any prior obligations to Employer. Employer believed that the Agreement terminated Employer's obligation to pay the insurance premiums and therefore, Employer ceased making these payments. Employer however contended that upon Employee's death or upon the maturity of the insurance policy, Employer was still entitled to collect the premiums paid because Employer did not expressly terminate this right in writing. The trial court held that the Agreement was a general release and neither Employer nor Employee had any obligation to the other. The Court of Appeals affirmed. The language of general release in the Agreement extinguished all rights and obligations of the parties to each other.

Contrastingly, in *Slankard,* Injured Passenger filed an action against the drivers of both vehicles involved in collision. The driver of the vehicle which Injured Passenger occupied (hereinafter "Motorist") filed a cross-claim against the deceased driver of the second vehicle (hereinafter "Second Driver"). Injured Passenger settled her claim against Motorist and executed a release and stipulation (hereinafter "Release"). Pursuant to the Release, Injured Passenger got $70,000.00 from State Farm, and released Motorist and State Farm from all future claims.

Specifically, the Release stated that Injured Passenger releases Motorist, State Farm ... *and all other persons, firms, and corporations whomsoever, from any and all claims, demands, obligations, actions, and causes of action, whether known or unknown, and whether accrued or yet to accrue, which she now has or might hereafter have as a direct or indirect result of injuries sustained....* (emphasis added).  The court viewed this broad exculpatory language as a general release on all persons, including Second Driver, and held that all injury to Injured Passenger stemming from the accident was satisfied by the $70,000.00 payment.

The language of both the National Release and the Mediated Settlement & Release is analogous to the language of the Agreement in *Goldring*.  Neither the National Release nor the Mediated Settlement & Release contain language which releases 'all other persons' nor is there any similarly broad language.  To the contrary, both the National Release and the Mediated Settlement & Release speak specifically to the parties of the respective instruments.

"A general release disposes of the entire subject matter involved." *Goldring v. Franklin Equity Leasing Co.*, 195 S.W.3d at 456-57.  "A party may limit or restrict a general release by expressing such intent in the general release . . . [and]  must have expressly reserved such right in the settlement agreement ... If a party fails to do so, the agreement will be interpreted to be a complete and final settlement of all the matters between the parties to the release" *Id.* at 457 (citing *Anderson v. Curators of the University of Missouri,* 103 S.W.3d 394, 399 (Mo. App. 2003)).  The National Release specifically limits the release to a resolution of the matters described in the claim between the parties: Moore and National.  Thus, the subject matter was limited to the contractual obligations between Moore and National in relation to Moore's insurance claim.  This did not serve as a release of all potential claims Moore may assert against all parties in relation to the crimes committed thereof.

Further, in paragraph six (6) of the Mediated Settlement & Release, Moore specifically reserved "all claims against their fidelity insurer and against any tortfeasors." Mediated Settlement

& Release, p. 3, ¶ 6.  There are genuine issues of material fact as to whether Debtor is indeed a

*tortfeasor,* or a criminal conspirer, in addition to the lack of broad language indicating a general

release.  Summary judgment is not appropriate.  Therefore,

**IT IS HEREBY ORDERED THAT** Debtor's Motion for Summary Judgement is **DENIED**.

*Kathy A. Surratt-States*

KATHY A. SURRATT-STATES
United States Bankruptcy Judge

DATED:  September 9, 2010
St. Louis, Missouri

Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO  63102

Charles W. Riske
Attorney at Law
231 S. Bemiston, Suite 1220
St. Louis, MO 63105

Stephen Patrick Dowil
Ochs & Klein, Attorneys at Law
149 N. Meramec
2nd Floor
Clayton, MO 63105

David G. Wasinger
Murphy Wasinger, L.C.
1401 South Brentwood Blvd. - Suite 550
Saint Louis, MO 63144

Kevin Michael Lewis
808 Waterford Villas
Lake Saint Louis, MO 63367

James C. Ochs
Ochs & Klein, Attorneys at Law
149 N. Meramec
2nd Floor
Clayton, MO 63105

Michael K Daming
Murphy Wasinger, L.C.
1401 S. Brentwood Blvd. - Ste. 550
St. Louis, MO 63144